IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICK FRANKLIN CORPORATION, | CV. 06-1647-SU |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATION |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MICHAEL CHERTOFF, in his official capacity as Secretary of the Department of Homeland Security; UNITED STATES COAST GUARD; and THE NATIONAL POLLUTION FUNDS CENTER, as the Administrator of the Oil Spill Liability Trust Fund, | |
| Defendants. | |

**Sullivan, Magistrate Judge:**

      Plaintiff Rick Franklin Corporation ("RFC") filed this action for reimbursement of pollution response costs under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et seq.

and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq. This court has jurisdiction pursuant to 28 U.S.C. § 1331. RFC filed a motion for summary judgment (#36), and defendants responded with their own motion for summary judgment (#42), requesting that all claims against them be dismissed. Oral argument on this motion was heard on November 2, 2007. For the reasons set forth below, this court recommends granting the defendants' motion for summary judgment and dismissing this case.

## BACKGROUND

On June 30, 1998, an accident occurred on U.S. Highway 395 in Grant County, Oregon. A truck operated by Larkin Transport and Storage ("Larkin Transport") overturned, releasing several thousand gallons of gasoline near a tributary to the John Day River, a navigable waterway of the United States. The next day, Larkin Transport requested that RFC conduct emergency cleanup activities arising from the gasoline tanker truck accident. RFC immediately commenced remediation of the gasoline spill which included removing and replacing 100-200 feet of highway, and excavating and removing approximately 6,800 cubic yards of contaminated soil. The spill site was cleaned up at the direction of officials from the Oregon Department of Environmental Quality.

RFC's costs to clean up the site amounted to $1,658,665.09. During the cleanup, a fee dispute arose between Larkin Transport and RFC regarding payment of RFC's invoices. RFC continued the cleanup in spite of the fee dispute. After the cleanup was complete, RFC filed suit in the Circuit Court of Grant County, Oregon, against Larkin Transport, Canal Insurance which was Larkin Transport's primary insurance carrier, and the State of Oregon. Larkin Transport filed a third party complaint against Acceptance Insurance Company ("Acceptance"), Larkin

Page 2 - FINDINGS AND RECOMMENDATION

Transport's excess insurance carrier. RFC settled its claim against the State of Oregon for payment of $70,000 and executed a covenant not to sue the State as a result of this incident. During the pendency of RFC's lawsuit against Larkin Transport and Canal Insurance, Canal Insurance paid RFC $972,107.12 under Larkin Transport's primary insurance policy. Deducting this amount from the total cost of the cleanup, RFC calculated that it was still owed $686,557.97, plus $313,962.41 that had accrued in pre-judgment interest. RFC alleges that during the course of the state court litigation, it believed that Larkin Transport did not have funds available to pay a judgment and that Larkin Transport's sole asset to pay a judgment was its $1 million excess insurance policy. AR 000322.

The Grant County Circuit Court ruled in favor of Larkin Transport and against Acceptance on the third party claim, finding coverage under the excess insurance policy.[1] Shortly after the Circuit Court's decision, RFC agreed to a settlement with Larkin Transport, executed on December 17, 2002. Larkin Transport executed a stipulated judgment in favor of RFC in the amount of $930,520.30. Larkin Transport assigned its rights against Acceptance to RFC. In exchange for the judgment and assignment, RFC executed a covenant not to sue and enforce judgment against Larkin Transport. AR 000214-218. Acceptance appealed the circuit court's decision to the Oregon Court of Appeals.

On October 9, 2003, approximately five years after the cleanup and while the appeal of the circuit court's decision was pending, RFC submitted a claim for $686,557.97 to the National

---

[1] The Grant County Court also found in favor of Canal, Larkin Transport's primary carrier regarding Canal's liability to RFC.

Page 3 - FINDINGS AND RECOMMENDATION

Pollution Funds Center ("NPFC").[2] That sum represented the amount of RFC's unpaid remediation costs after the payment by Canal Insurance. RFC did not include in its claim prejudgment interest or the costs and expenses incurred in recovering the nearly $1 million from Larkin Transport. On January 12, 2004, the NPFC denied RFC's claim. The NPFC's rationale for denying the claim was that RFC had obtained a stipulated judgment against Larkin Transport, the responsible party, and had then entered into a covenant not to enforce the judgment. In exchange, Larkin Transport assigned to RFC its rights against Acceptance to the excess insurance. According to the NPFC, by entering into that covenant, RFC signed away the government's right to subrogate the claim directly against the responsible party. The NPFC stated that the agreement represented an absolute bar to any recovery on this incident by RFC against Larkin Transport.[3] Because RFC gave up its rights of recovery against Larkin Transport, no claim for subrogation was available to the United States against the responsible party for uncompensated removal cost under the OPA. 33 U.S.C. § 2712(a)(4). On February 3, 2004, RFC requested reconsideration of the denial. The reconsideration of the claim was suspended during the pendency of the appeal of the circuit court decision in the Oregon Court of Appeals. In August 2004, Acceptance offered $300,000 to RFC to settle the insurance coverage appeal. RFC rejected this offer.

On August 2, 2006, the Oregon Court of Appeals reversed in part the decision of the

---

[2] The United States Coast Guard administers the OPA. The OPA provided for creation of the Oil Spill Liability Trust Fund ("the Fund") for payment of uncompensated removal costs and damages. The National Pollution Funds Center is the administrator of the Fund.

[3] The parties do not dispute that RFC is barred from any recovery from Larkin Transport.

Page 4 - FINDINGS AND RECOMMENDATION

circuit court, and held that Acceptance's excess policy did not provide coverage for Larkin Transport.  Rick Franklin Corp. v. State ex rel. Dep't of Transportation, 207 Or. App. 183 (2006).[4]  On August 11, 2006, RFC renewed its request for reconsideration to the NPFC.

On October 25, 2006, the NPFC again denied payment on RFC's claim on two grounds.  First, the NPFC, citing 33 U.S.C. § 2713(c), pointed out that RFC had chosen to exercise its rights by way of a civil action and was awarded compensation by way of a money judgment and associated covenants.  Second, the NPFC reiterated its previous reasoning regarding the covenant RFC had entered with Larkin Transport releasing the latter from liability.  NPFC decided that, based on RFC's release of its rights against Larkin Transport, RFC was unable to transfer "all rights of the claimant" to the United States as required under the statute.  33 U.S.C. § 2712(f).

On November 14, 2006, RFC filed its complaint in this case, challenging the NPFC's denial of its claim based on misinterpretation of the applicable statute.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); Bahn v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof.  The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24

---

[4] In December 2006, the Oregon Supreme Court denied review.  Rick Franklin Corp. v. State ex rel. Dep't of Transportation, 342 Or. 116 (2006).

Page 5 - FINDINGS AND RECOMMENDATION

(1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Id. Here, there is no dispute of fact regarding the actual events of the spill and the cleanup that ensued. Nor is there any dispute regarding the facts involving the state litigation and settlement agreement between RFC and Larkin Transport. Rather, the dispute here is about the correct interpretation of the OPA requiring subrogation of the claimant's rights in favor of the government when a compensation claim is made.

Where the NPFC has denied a claim and the agency decision has been deemed final, judicial review is available under the APA, 5 U.S.C. §§ 701-706. Under the APA, a court may set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). With regard to judicial review of an agency's construction of a statute which it administers, if Congress has not directly spoken to the precise question at issue, the question for the court is whether the agency's answer is based upon a permissible construction of the statute. Chevron U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). The agency's action may not be set aside so long as it has a "rational basis." Prairie Wood Products v. Glickman, 971 F. Supp. 457, 462 (D. Or. 1997) (citing Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 290 (1974); Friends of the Earth v. Hintz, 800 F.2d 822, 831 (9th Cir. 1986)). Review under this standard is to be searching and careful, but remains narrow, and a court should not substitute its judgment for that of the agency. Mt. Graham Red Squirrel v. Espy, 986 F.2d 1568, 1571 (9th Cir. 1993) (citing Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989)).

## DISCUSSION

**I.    The Court Lacks Jurisdiction Over Plaintiff RFC's Claim under the OPA.**

RFC's First Claim for Relief alleges a violation of the OPA and asks the Court to order compensation for its uncompensated removal costs under 33 U.S.C. § 2712(a)(4). NPFC contends that this court lacks subject matter jurisdiction over RFC's direct OPA claim because the government has not waived sovereign immunity. RFC does not respond directly to this argument in its brief. RFC argues only that this court is authorized to review a final decision of the NPFC under the APA. Plaintiff's Brief at 4-5. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The OPA does not contain a waiver of the government's sovereign immunity from suit. See Int'l Marine Carriers v. Oil Spill Liability Trust Fund, 903 F. Supp. 1097, 1102 (S.D. Tex. 1994) (finding that nothing in the OPA sections at issue in this case can be construed as a waiver of sovereign immunity). I recommend that RFC's first claim be dismissed for lack of jurisdiction. The only review of the agency's decision here is under the APA.

**II.    The NPFC's Interpretation of the OPA Does Not Violate the APA.**

    **A.    The NPFC Correctly Determined that RFC Was Not Entitled to Compensation under the OPA Based on the Government's Inability to Acquire Subrogation Rights**

The heart of this dispute centers on an issue of statutory interpretation: whether the NPFC correctly interpreted the OPA, 33 U.S.C. § 2712(f), to require RFC to have retained all rights to recover against the responsible party, Larkin Transport, in order that the government would be able to acquire those rights by subrogation after compensating RFC on its claim. RFC argues that it was not required to "preserve" subrogation rights against Larkin Transport, and

that the statute requires only that a claimant provide the subrogation rights it has at the time the claim is paid. The government argues that by entering into a settlement with Larkin Transport that included a covenant that released Larkin Transport from liability, RFC impaired its ability to give all of its subrogation rights against the responsible party to the NPFC. As a result, RFC was not eligible for compensation under the statute.

Under the OPA, responsible parties are liable for removal costs and damages resulting from discharges of oil into navigable waters and adjoining shorelines. 33 U.S.C. § 2702(a). The Oil Spill Liability Trust Fund ("the Fund") is available to pay for uncompensated removal costs and damages. 33 U.S.C. §§ 2712(a)(4), 2713; 33 C.F.R. Part 136. Under the OPA, all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source designated. 33 U.S.C. § 2713(a). No claim against the Fund may be approved or certified for payment during the pendency of an action by the claimant in court to recover the same costs that are the subject of the claim. 33 U.S.C. § 2713(b)(2); 33 C.F.R. § 136.103(d).[5] The claimant may elect to commence an action in court against the responsible party or guarantor, or to present the claim to the Fund. 33 U.S.C. § 2713(c); 33 C.F.R. § 136.103(c)(2).

With regard to rights of subrogation, 33 U.S.C. § 2712(f) provides:

> Payment of any claim or obligation by the Fund under this Act shall be subject to the United States Government acquiring by subrogation all rights of the claimant or State to recover from the responsible party.

The statute further provides that any person, including the Fund, who pays compensation

---

[5] While the claim was presented by RFC while litigation in state court was pending, reconsideration of the denial by NPFC was stayed pending the Oregon Court of Appeals decision.

Page 8 - FINDINGS AND RECOMMENDATION

pursuant to the statute to any claimant for removal costs shall be subrogated to all rights, claims and causes of action that the claimant has under any other law. 33 U.S.C. 2715(a). The government may commence an action on behalf of the Fund against any responsible party or guarantor, or against any other person who is liable, for the cost or damages for which compensation by the Fund was paid to the claimant. Id. at § 2715(c).

The government contends that its interpretation of 33 U.S.C. § 2712(f), the disputed section of the OPA, is supported by Kenan Transport Co. v. U.S. Coast Guard, No. 1:04-CV-3186-WSD, 2006 WL 1455658 (N.D. Ga. May 19, 2006), aff'd, No. 06-13876, 2006 WL 3749570 (11th Cir. Dec. 21, 2006), a recently decided case addressing this same issue. In Kenan, the District Court in the Northern District of Georgia held that "[r]eimbursement is allowed only if claims against the third party are preserved so they may be asserted by the Government as subrogee of the claims." Kenan, 2006 WL 1455658 at *4. The court found that, under Georgia law, the release the claimant signed with the responsible party was sufficiently broad that the condition of § 2712(f) was violated, and that the decision to deny the claimant's reimbursement claims was not arbitrary, capricious, an abuse of discretion or not in accordance with applicable law. Id. at *5. On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's interpretation of the disputed section and the government's denial of the claimant's reimbursement claim "because Kenan was unable to transfer its rights to clean-up costs to the government as required by § 2712(f)." 2006 WL 3749570 at *3.

RFC argues that claimants should not be required to "preserve" subrogation claims against responsible parties as the court found in Kenan. RFC attempts to distinguish Kenan from the case at bar by pointing to Kenan's focus on Georgia contract law. RFC contends that adding

the preservation requirement into the statute harms the purpose of the Fund which is to pay the claims of parties that expeditiously remediate oil spills. RFC advocates a reading of § 2712(f) that would provide the government with all the subrogation rights a claimant possessed at the time of payment of the claim. RFC claims that the NPFC could have acquired by subrogation the excess insurance policy, the only asset Larkin Transport had at the time RFC made its claim to the Fund. Finally, RFC argues that the NPFC's reading of § 2712(f) creates a defense to liability and that the OPA's section addressing defenses to liability, where a claimant is grossly negligent or exhibits willful misconduct, is exclusive. See § 2712(b).

RFC's arguments are not persuasive. The plain language of § 2712(f) uses the words "all rights" when describing what subrogation rights will be acquired by the government when a claimant is compensated by the Fund. No time limitation or any other limitation is contained in that section. The language of the statute gives no indication that Congress intended any limitation on the government's subrogation rights. The statute clearly provides that a claimant must be able to supply the government with <u>all</u> of its subrogation rights against a responsible party. RFC's interpretation that the statute should be read to mean that all rights actually means the subrogation rights a claimant possessed <u>at the time of payment of the claim</u> is not supported by the plain language of the statute.

The NPFC's interpretation of § 2712(f) was upheld by the Eleventh Circuit Court of Appeals in <u>Kenan</u> when the court explained that "[f]or Kenan to prevail, the release agreement must preserve claims against [the responsible party] for clean-up costs." 2006 WL 3749570 at *2. Though not controlling in this circuit, the Eleventh Circuit's decision is instructive regarding Congress' intent. In § 2712(f), the intent of Congress is explicit. However, even if the

provisions of the OPA were open to interpretation, this court must defer to the agency's interpretation of the statute. <u>Chevron</u>, 467 U.S. at 844.

RFC's interpretation of § 2712(f) does not conform to the statutory scheme as provided in the OPA. Dischargers, like Larkin Transport, are the responsible parties. A claim must be made against the responsible party before the claim is submitted to the government under the OPA. If the responsible party refuses to pay, the claimant may either sue the responsible party or seek compensation from the Fund. If the Fund pays the claim, the government must have the ability to seek recourse against the responsible party. The claimant is not permitted to release the responsible party from liability for cleanup costs and expect to be compensated by the Fund. The government is not an insurer of the costs of cleanup. <u>See</u> <u>Gatlin Oil Co. v. United States</u>, 169 F.3d 207, 213 (4th Cir. 1999) (specifying that OPA does not function as a "private insurance company" and provides only limited compensation when a responsible party is not available to respond to an oil spill). Considerable weight must be accorded to an agency's construction of a statutory scheme it is entrusted to administer. <u>Chevron</u>, 467 U.S. at 844.

Here, the record reveals that RFC made a business decision to release Larkin Transport from liability believing that Larkin Transport did not have any viable assets beyond its excess insurance policy. AR 000324. Some evidence suggests that RFC may have been incorrect in assessing Larkin Transport's assets. AR 000144-201. RFC also made a decision to reject Acceptance Insurance's $300,000 settlement offer after the circuit court ruled in RFC's favor. RFC argues that it offered to assign its rights to the excess insurance policy to the government. However, the risks taken by RFC should not be passed along to the government. Under the OPA, specifically § 2712(f), NPFC has the authority to make decisions regarding recovery

Page 11 - FINDINGS AND RECOMMENDATION

against a responsible party after receiving all subrogation rights from a claimant.

RFC attempts to characterize the government's interpretation of § 2712(f) as a defense to liability in conflict with the explicit defenses laid out in the OPA. However, § 2712(f), as a statutory requirement, is a condition providing that <u>all</u> rights against the responsible party be available in order for a claimant to be eligible for compensation. <u>Kenan,</u> 2006 WL 3749570 at *2-3. Any other interpretation would violate the clear intent of the statute. Defendants' decision in denying compensation under the OPA, specifically § 2712(f), comports with the plain language of the statute, existing judicial authority and congressional intent.[6]

### B. The NPFC Correctly Determined that RFC Was Not Entitled to Take Advantage of Compensation under the Fund Based on RFC's Receipt of Compensation in its Lawsuit Against Larkin Transport

RFC contends that the NPFC erred in denying the claim for compensation based on RFC's choice to file a civil action to recover its costs rather than applying directly to the NPFC. NPFC's denial of the claim based on RFC's inability to convey any right to subrogation against the responsible party is sufficient to decide the case. As stated above, however, the statutory scheme under the OPA provides that, after presenting the claim to the responsible party, the claimant may elect to commence an action in court against the responsible party or guarantor, or to present his claim to the Fund. 33 U.S.C. § 2713(c). The NPFC's denial of RFC's claim was correctly based on RFC's inability to convey subrogation rights or any possibility of recovery against Larkin Transport to the government. This court does not interpret the OPA as requiring an exclusive election between filing a claim with the NPFC and pursuing the responsible party in court. RFC would not have lost the ability to apply to the NPFC after concluding its lawsuit

---

[6] See <u>Kenan</u>, 2006 WL 1455658 at *4 n.7 (reviewing legislative history).

Page 12 - FINDINGS AND RECOMMENDATION

against Larkin Transport had it not released Larkin Transport from any further liability.  Rather, RFC was not entitled to compensation from the NPFC because the settlement and release it executed with Larkin Transport barred any further recovery against Larkin Transport.

Because this court finds that the NPFC's interpretation of the statutory provisions of the OPA regarding subrogation and exclusivity of election were in accordance with the law and were not arbitrary, capricious or an abuse of discretion, I recommend that plaintiff RFC's second claim for violation of the APA be dismissed.

### III.     Substantial Compliance

In the alternative to its argument based on statutory construction, RFC asks the court to reverse the NPFC's denial of its claim based on the equitable principle of substantial compliance.  RFC contends that because it substantially complied with the requirements for recovery from the Fund, the claim submitted to the NPFC should be allowed.  RFC argues that the primary purpose of the OPA is to encourage rapid response to environmental disasters, regardless of the availability of subrogation rights, and invoking substantial compliance will avoid an unfair result in this case.  While the court does not disagree with RFC's statement of the OPA's purpose,  RFC did not substantially comply with the OPA where it failed to provide all subrogation rights to the NPFC as required by § 2712(f).  RFC argues that it acted in good faith and made decisions that resulted in receiving payment of approximately $1 million from Larkin Transport's primary insurer.  In fact,  RFC acted in its own best interests and made business decisions that resulted in its release of Larkin Transport and consequent failure to comply with the OPA.  Under the circumstances, NPFC was correct in denying RFC's claim.

Page 13 - FINDINGS AND RECOMMENDATION

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (#36) should be denied, defendants' motion for summary judgment (#42) should be granted as to all claims and a judgment should be prepared dismissing this action with prejudice.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 31, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 16th day of January, 2008.

      /s/ Patricia Sullivan
Honorable Patricia Sullivan
United States Magistrate Judge